IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **DUSTY YOUNG,** | |
| Petitioner, | |
| v. | Case No. 3:22-CV-02470-NJR |
| **UNITED STATES OF AMERICA,** | |
| Respondent. | |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on Petitioner Dusty Young's motion to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. (Doc. 1). Young contends that his conviction and corresponding sentence for participating in a methamphetamine distribution conspiracy must be vacated because he received ineffective assistance from his trial counsel in violation of his Sixth Amendment rights. For the reasons set forth below, Young's section 2255 motion is denied.

## BACKGROUND

Young was charged in February 2019 with conspiracy to distribute and possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1) and 841(b)(1)(A)(viii). *See United States v. Young*, No. 3:19-cr-30018-NJR-4 (S.D. Ill.), Doc. 1. The indictment alleged that the total amount of methamphetamine involved in the conspiracy was contained in a substance weighing more than 500 grams.

Young appeared before the Court for a change of plea hearing on September 11, 2019, where he was represented by attorney Jordan J. Campanella. He was placed under

oath and was warned that he could be charged with perjury if he lied, which he indicated that he understood. (Doc. 8-1 pp. 3-4). The undersigned then asked Young questions relevant to determining his competency and ability to understand the proceedings. Young represented that he could read and write, denied any recent treatment for mental health issues, and denied being under the influence of alcohol, drugs, or medications. (*Id.* at pp. 5-6). The undersigned then explained to Young the right to trial and associated rights that he was waiving by pleading guilty. (*Id.* at pp. 6-10). Young affirmed that he wished to give up those rights by pleading guilty. (*Id.* at p. 10). As part of his plea agreement, Young stated that he was satisfied with his attorney's representation and when asked by the undersigned whether he had questions about that portion of the plea agreement, he responded that he did not. (*Id.* at pp. 15-16).

After the Government explained the elements of the conspiracy charge, the undersigned reminded Young that he faced a mandatory minimum sentence of 10 years in prison, up to a maximum of life in prison, along with a $10 million fine, a 5-year minimum term of supervised release, and a $100 special assessment. (*Id.* at p. 11-12). Young affirmed that he understood those possible penalties. (*Id.* at p. 12).

The undersigned then addressed the voluntariness of Young's plea. Young denied that anyone had pressured or forced him to plead guilty. (*Id.* at p. 13). The undersigned explained the nature of the sentencing guidelines and asked Young if he had discussed the advisory character of the guidelines with Mr. Campanella, which Young affirmed. (*Id.* at pp. 13-14, 16-17). The undersigned also explained that the plea agreement included a waiver of certain rights to seek review of his conviction that would restrict his ability

"to seek modification of, or contest any aspect of the conviction, or sentence, in any type of proceeding." (*Id.* at p. 15). The waiver provided that Young would forgo any right to bring a collateral attack to the constitutionality of the statute to which he pleaded guilty or to later argue his conduct fell outside the statute's scope. (*Young*, No. 3:19-cr-30018-NJR-4 (S.D. Ill.), Doc. 145, pp. 9-10). However, Young did not waive his right to argue on appeal or in a collateral proceeding that he had received ineffective assistance of counsel. (*Id.* at p. 10).

After the Government reviewed the factual stipulation supporting the plea, Young stated that he agreed with the facts as described by the Government and denied having any questions. (Doc. 8-1 pp. 19-20). Young then affirmed that his decision to plead guilty was based on his own free will. (*Id.* at pp. 20-21). Finding Young's guilty plea entered knowingly and voluntarily, the undersigned accepted his plea. (*Id.* at p. 21).

Following Young's guilty plea, the United States Probation Office prepared an initial presentence report ("PSR"). (*Young*, *supra*, Doc. 131). The PSR recommended—and the parties agreed—to a base offense level of 34 because the conspiracy involved 5.188 kilograms of a substance containing methamphetamine. (*Id.* at p. 7). The parties also agreed that Young was subject to the career offender enhancement found in Section 4B1.1 of the Sentencing Guidelines, increasing his offense level by an additional three levels. (*Id.*). Young received a three-level reduction for his acceptance of responsibility. (*Id.*). His ultimate guideline range of 262 to 327 months imprisonment was driven, in large part, by his lengthy criminal history and career offender designation, which placed in him criminal history category VI. (*Id.* at p. 23).

In preparation for sentencing, Mr. Campanella filed a sentencing memorandum and supplement. (*Young*, *supra*, Docs. 135, 136). He argued principally that Young's criminal history was overstated and that his conduct was influenced by his addiction. On December 18, 2019, the Court sentenced Young to 244 months of imprisonment, below the guideline range of 262 to 327 months, followed by five years of supervised release. (*Young*, *supra*, Doc. 141).

Young did not file a direct appeal with the United States Court of Appeals for the Seventh Circuit. Instead, on October 24, 2022, Young moved to vacate his conviction and sentence under 28 U.S.C. § 2255. (Doc. 1). Upon preliminary review, the Court ordered the government to file a response. (Doc. 2). Young later filed a reply brief. (Docs. 10).

### LEGAL STANDARD

Section 2255 of Title 28 of the United States Code provides a federal prisoner with a post-conviction remedy to test the legality of their detention "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). "[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007) (citing *Kafo v. United States,* 467 F.3d 1063, 1068 (7th Cir. 2006)). Thus, it "is available only in extraordinary situations, such as an error of constitutional or jurisdictional magnitude or where a fundamental defect has occurred which results in a complete miscarriage of justice." *Blake v. United States*, 723 F.3d 870, 878-79 (7th Cir. 2013) (citations omitted).

## DISCUSSION

Young contends that he is entitled to relief because his trial counsel was ineffective in several respects. He says Mr. Campanella advised him to plead guilty "without challenging the 851 enhancement," failed to investigate whether his prior drug offenses permitted an enhancement of his sentence under sections 841(a)(1) and (B)(1)(A) of Title 21, failed to contest the career offender enhancement under U.S.S.G. § 4B1.1, and encouraged him to plead guilty with a plea agreement that contained a waiver of his rights to appellate and collateral review (Claim I). (Doc. 1 pp. 4-5). Apart from his ineffective assistance claims, Young argues his sentence is invalid because his prior offenses in Missouri cannot be counted toward the career offender enhancement (Claims II and III) and that the Court committed "plain error" "by applying a sentencing enhancement pursuant to 841(b)(1)(A) and 851" (Claim IV). (*Id.* at pp. 7-8).

### A. Timeliness

The government argues that Young's motion is untimely. A motion for relief under 28 U.S.C. § 2255 is subject to a one-year limitations period, which runs from the latest of four possible dates:

(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) The date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

> (4) The date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f).

In a typical case, the limitations period will begin to run under subsection (f)(1) of § 2255, or the date on which the challenged conviction becomes "final." *Id.* § 2255(f)(1). Where a defendant does not seek direct review, as here, finality coincides with the expiration of the deadline to file a notice of appeal, *see Clarke v. United States*, 703 F.3d 1098, 1100 (7th Cir. 2013), generally 14 days after the entry of judgment, Fed. R. App. P. 4(b)(1)(A)(i). Here, Young's conviction became final for purposes of 28 U.S.C. § 2255(f)(1) on January 2, 2020—14 days from the date of judgment, plus an additional day because the last day of the appeal period fell on New Year's Day. *See* Fed. R. App. P. 26(a)(1)(C). The limitations period would thus have expired one year later—on January 2, 2021. Young, however, did not file his Section 2255 motion until October 24, 2022, nearly two years after the deadline.

Attempting to explain the untimely filing, Young cites "Rule 52." Most likely, he refers to Federal Rule of Criminal Procedure 52, which provides that "[a] plain error that affects substantial rights may be considered even though it was not brought to the court's attention." Fed. R. Crim. P. 52(b). Young contends that his substantial rights were affected by an impermissible enhancement to his sentence under 21 U.S.C. §§ 841 and 851, so the error can be considered now.

At least two problems present. First, the "plain error" standard announced in that rule "was intended for use on direct appeal" and "is out of place when a prisoner launches a collateral attack against a criminal conviction . . . ." *United States v. Frady*,

456 U.S. 152, 164 (1982); *United States v. Anaya*, 736 F. App'x 205, 206 (10th Cir. 2018) ("[T]he rule does not provide an independent legal basis for a collateral attack on a final judgment."). Put simply, there is no "plain error" exception to the time limitations specified in § 2255(f). Perhaps the more fundamental problem, however, is that Young's sentence *was not* driven by any enhancement under 21 U.S.C. §§ 841(b)(1)(A) and 851 but by the career offender sentencing guideline.

Young also attempts to explain his untimely filing by citing *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020), which he says establishes new law retroactive on collateral review and restarts the deadline under subsection (f)(3). As the government aptly points out, however, *Ruth* is a decision of the Seventh Circuit, not of the Supreme Court, as would trigger that extended limitation period.

Of course, § 2255's limitations period is not jurisdictional and is subject to equitable tolling. *Nolan v. United States*, 358 F.3d 480, 483 (7th Cir. 2004). However, "the threshold necessary to trigger equitable tolling is very high[.]" *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir. 2000). A petitioner seeking equitable tolling "must show: (1) that [they have] been pursuing [their] rights diligently; and (2) that some extraordinary circumstance stood in [their] way and prevented timely filing." *Lombardo v. United States*, 860 F.3d 547, 551 (7th Cir. 2017) (citing *Holland v. Florida*, 560 U.S. 631, 649 (2010)). In establishing diligence, a petitioner must demonstrate their "reasonable effort throughout the limitations period" beyond "mere conclusory allegations of diligence[.]" *Mayberry v. Dittmann*, 904 F.3d 525, 531 (7th Cir. 2018) (citing *Carpenter v. Douma*, 840 F.3d 867, 870 (7th Cir. 2016)). Extraordinary circumstances exist only where an external factor beyond

the petitioner's control caused the delay in filing. *Lombardo*, 860 F.3d at 552 (citing *Menominee Indian Tribe of Wis. v. United States*, 577 U.S. 250, 257 (2016)).

Young offers two reasons tolling would be appropriate here: his lack of access to prison library resources due to COVID protocols at several facilities where he resided and a need to "check in" because he "help[ed] the gov. on cases." (*See* Doc. 1 p. 11; Doc. 10 p. 2).

Equitable tolling "can extend the one-year period available for filing" when an applicant experiences some extraordinary circumstance, beyond their control, that prevents timely filing. *Perry v. Brown*, 950 F.3d 410, 412 (7th Cir. 2020); *see generally Holland v. Florida*, 560 U.S. 631 (2010). The prisoner must also show that he has "diligently pursued his claim, despite the obstacle." *Tucker v. Kingston*, 538 F.3d 732, 734 (7th Cir. 2008). "[S]imple legal errors, such as ignorance of the federal deadline, do not suffice." *Perry*, 950 F.3d at 412. Even so, "the diligence required for equitable tolling purposes is reasonable diligence . . . not maximum feasible diligence." *Moreland v. Eplett*, 18 F.4th 261, 271 (7th Cir. 2021) (quoting *Holland*, 560 U.S. at 653) (cleaned up).

The Seventh Circuit has held that a prisoner's limited access to the prison law library is not grounds for equitable tolling. *Tucker*, 538 F.3d at 735 (citing *Jones v. Hulick*, 449 F.3d 784, 789 (7th Cir. 2006)). However, the court of appeals has also suggested that a prisoner's lack of access to a law library remains a relevant consideration, particularly when coupled with the exigencies of the COVID-19 pandemic and other factors. *See Lairy v. United States*, 142 F.4th 907, 917 (7th Cir. 2025) (remanding for an evidentiary hearing to establish whether a prisoner was entitled to tolling where he claimed he was in

lockdown for the majority of the one-year filing period, lacked access to the law library during these lockdowns, and, despite repeated requests to his former counsel, received access to some of his case files a day before filing his amended petition). Simply referring to the pandemic is not enough to establish extraordinary circumstances; a petitioner must, at a minimum, provide an explanation of how COVID-19 prevented him from timely filing his petition. *United States v. Reeves*, No. 14-1588, 2022 WL 17832713, at *7 (N.D. Ill. Dec. 21, 2022); *see also Zuno v. Brannon-Dortch*, No. 21-4786, 2023 WL 4083907, at *6 (N.D. Ill. June 20, 2023); *Katz v. U.S. Dep't of Lab.*, 857 F. App'x 859, 864 (7th Cir. 2021).

In his reply brief, Young adds additional detail to his explanation. He states that he was subject to strict quarantine protocols during the first two years of his incarceration and had limited access to the law library. He avers that quarantine protocols in prison affected his efforts between March 18, 2020, and March 1, 2021, and that he then was placed in protective custody for nearly six months between March and September of 2021. Then, he was transferred to a BOP facility in Oklahoma City for three weeks before being placed into a quarantine at a new facility in Louisiana. Young says that he was "finally put into [a] RHU unit" on October 27, 2021, but the facility had a lengthy waitlist of inmates hoping to use the single computer in the law library. He also mentions a concern regarding his cooperation with the government but does not explain in much detail.

Although an evidentiary hearing is necessary when a petitioner alleges facts that, if true, would entitle him to relief, *Mayberry*, 904 F.3d at 532, "when a petitioner's allegations supporting equitable tolling are vague or conclusory, or when 'the files and

Page 9 of 20

records of the case *conclusively* show that the prisoner is entitled to no relief,'" no hearing is needed. *Lairy*, 142 F.4th at 917 (quoting *Mayberry*, 904 F.3d at 532).

No evidentiary hearing is necessary here. Although the Court is sensitive to the exigencies caused by the COVID-19 pandemic and is willing to credit that those circumstances affected Young's access to the law library, *see id.*, that explanation only takes him so far. The defendant in *Lairy*, for instance, also had to contend with extensive delays by his former counsel in furnishing case files. *Id.* at 917; *see also Socha v. Boughton*, 763 F.3d 674, 686 (7th Cir. 2014) (holding that equitable tolling was appropriate where the prisoner was without access to most of the documents pertaining to his case for the majority of the limitations period and, when finally able to access his documents, could not bring them to his cell to review them).

By Young's own account, his living conditions within his prison facilities had returned to some degree of normalcy by October 27, 2021, and he had access to a law library at that time. Yet he did not file his 2255 motion until October 24, 2022—nearly a year later. The only explanation he offers for *that* delay is a lengthy backlog of prisoners hoping to use a single computer in his prison's law library. But if a lack of access to a law library is insufficient in this Circuit, it is not clear why a lack of access to a computer in the library would be. More than that, Young offers no specific details regarding how he exercised reasonable diligence during the years-long delay, notwithstanding the computer backlog. He alludes to a need to "check in" due to his cooperation with the government on cases, but much about this rationale is left unexplained. Who did he need to "check in" with? Why would assisting the government hamper his ability to file

timely? Why did the "check in" process take so long? Young's allegations are wholly insufficient to justify equitable tolling. No hearing is necessary to assess his entitlement to that relief. *Ademiju v. United States*, 999 F.3d 474, 478 (7th Cir. 2021).

For these reasons, the Court concludes that the Section 2255 motion is procedurally barred as untimely.

### B. Waiver

Even if Young were entitled to tolling of the filing deadline, his claims would fail on the merits. As an initial matter, the Government observes that Young waived his right to collaterally attack his sentence for most reasons as part of his plea agreement. The Government is correct. Young bargained away his right to collaterally attack his conviction on most grounds other than if his sentence exceeded the Sentencing Guidelines or for claims that he received ineffective assistance of counsel. (*Young*, *supra*, Doc. 123, pp. 9-10). The Seventh Circuit has held that a knowing and voluntary waiver of the right to appeal or to collaterally attack a conviction and sentence is valid and enforceable. *See Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999); *see also Keller v. United States*, 657 F.3d 675, 681 (7th Cir. 2011). "But for a waiver to apply, the disputed appeal or collateral attack must fall within the waiver's scope." *Dowell v. United States*, 694 F.3d 898, 902 (7th Cir. 2012). After all, a plea agreement is a contract, and the terms of the agreement are interpreted according to the reasonable expectations of the parties with any ambiguities construed in the light most favorable to the criminal defendant. *Id.* Still, the enforceability of waiver provisions is subject to a few exceptions. A defendant retains the right to challenge:

> (1) a sentence based on constitutionally impermissible criteria, such as race; (2) a sentence that exceeds the statutory maximum for the defendant's particular crime; (3) deprivation of some minimum of civilized procedure (such as if the parties stipulated to trial by twelve orangutans); and (4) ineffective assistance of counsel in negotiating the plea agreement.

*United States v. Adkins*, 743 F.3d 176, 192-93 (7th Cir. 2014) (quoting *United States v. Bownes*, 405 F.3d 634, 637 (7th Cir. 2005)).

Young does not develop an argument that his claims, with the obvious exception of his ineffective assistance of counsel claims, are outside the scope of the waiver's plain terms. He also does not argue that he unknowingly or involuntarily entered the waiver. Indeed, he confirmed he understood the waiver on the record during his change of plea hearing. (Doc. 8-1, p. 15). The undersigned found that Young was competent to plead guilty, and he does not now contend otherwise. Thus, all of Young's claims, except for his ineffective assistance of counsel claims, must also be dismissed for this reason.

### C. Ineffective Assistance

Young's ineffective assistance claims indisputably lack merit. A Sixth Amendment claim of ineffective assistance of counsel is analyzed under the Supreme Court's two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). First, the petitioner must show that counsel's performance was deficient, "meaning it fell below an 'objective standard of reasonableness' informed by 'prevailing professional norms.'" *McElvaney v. Pollard*, 735 F.3d 528, 532 (7th Cir. 2013) (quoting *Strickland*, 466 U.S. at 688). The petitioner also must show that "counsel's deficient performance prejudiced him, meaning that there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *McElvaney*, 735 F.3d at 532 (quoting *Strickland*,

466 U.S. at 688). "[T]he Sixth Amendment right to effective assistance of counsel extends to assistance rendered when deciding whether to reject a plea offer." *Almonacid v. United States*, 476 F.3d 518, 521 (7th Cir. 2007). But in light of the waiver provisions contained in Young's plea agreement, he must do more than "assert that a constitutional violation preceded his decision to plead guilty or that his trial counsel was ineffective for failing to raise the constitutional claim." *Hurlow v. United States*, 726 F.3d 958, 966 (7th Cir. 2013). "[H]e must allege that the plea agreement was the product of ineffective assistance of counsel or tainted by ineffective assistance of counsel." *Id.* at 967 (citations omitted).

A court may address the elements of the *Strickland* test "in whichever order is most expedient." *Watson v. Anglin*, 560 F.3d 687, 690 (7th Cir. 2009). Moreover, where a claim of ineffective assistance fails on one prong, the court need not address the other prong insofar as the failure to satisfy either prong is fatal to the claim. *See Ebbole v. United States*, 8 F.3d 530, 533 (7th Cir. 1993).

None of Young's ineffective assistance arguments persuade. He first alleges that Mr. Campanella fell below professional standards expected of counsel by advising him to plead guilty "without challenging the 851 enhancement" or investigating whether his prior drug offenses qualified as predicates for the enhancement. (Doc. 1 p. 4). It appears that Young is referring to the alternative mandatory minimum penalties contained in 21 U.S.C. § 841 for individuals convicted of certain prior offenses. However, the Government never filed an information under 21 U.S.C. § 851 detailing Young's prior offenses, as would have been necessary to trigger those enhanced penalties. Young's

attorney was not ineffective for failing to investigate or otherwise counter an issue that never arose.

Next, Young argues his attorney should have investigated whether he qualified as a career offender under § 4B1.1 of the Sentencing Guidelines. He argues that his prior Missouri convictions do not meet the Guidelines' definition of "controlled substance offenses" because Missouri law forbids possession of positional, optical, and geometric isomers of certain substances, while federal law embraces a narrower definition. Young's argument draws on cases like *United States v. Ruth*, 966 F.3d 642 (7th Cir. 2020), and others, which hold that the drug offenses of some states are not predicate crimes for § 841's enhanced penalties because the state statutes are categorically broader than the federal statute by defining certain drugs (frequently cocaine) to include all isomers. Were Young subject to a penalty enhancement in 21 U.S.C. § 841, this argument might be worth deeper exploration (although Young's prior convictions were for a variety of controlled substances other than cocaine). The argument does little for Young here, however, because his sentence was driven by the career offender provision of the Sentencing Guidelines, not § 841.

Under the Sentencing Guidelines, an individual is a "career offender" if, among other requirements, "the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a) (2018 ed.). A "controlled substance offense," in turn, is:

> [A]n offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit

substance) with intent to manufacture, import, export, distribute, or dispense.

*Id.* § 4B1.2(b). Because the definition includes no further guidance about what constitutes a controlled substance, some courts read the provision to incorporate the Controlled Substance Act's definition, found in 21 U.S.C. § 802(6). Consequently, a prior state conviction would not suffice if the state defined controlled substances more broadly than the federal law. However, the Seventh Circuit has not adopted that approach. Instead, it held in *Ruth* that the Guidelines' definition of "controlled substance" is distinct from the CSA's and "is generally understood to be any of a category of behavior-altering or addictive drugs, as heroin or cocaine, whose possession and use are restricted by law." 966 F.3d at 654 (citation omitted). Under that view, a state conviction may qualify as a predicate for the career offender guideline even if the state defines controlled substance more broadly than federal law. *Id.*

*Ruth* thus forecloses Young's argument that his Missouri offenses do not qualify as career offender predicates. Although defendants at times have urged the court of appeals to revisit its holding, *Ruth* remains good law in this circuit. *See United States v. Ramirez*, 52 F.4th 705, 716 (7th Cir. 2022); *United States v. Harris*, No. 24-1173, 2025 WL 586834, at *2 (7th Cir. Feb. 24, 2025), *cert. denied*, 145 S. Ct. 2867 (2025); *United States v. Johnson*, No. 22-2239, 2024 WL 3565263, at *1 (7th Cir. July 29, 2024). Young did not receive ineffective assistance of counsel on this ground.

Finally, Young argues that his attorney was ineffective for advising him to take a plea that contained an appeal waiver. He does not clearly explain how the inclusion of the waiver fell below a reasonable standard of professional assistance. That omission is

problematic because "the mere existence of an appellate waiver in a plea agreement, by itself, does not establish ineffective assistance of counsel." *Godinez v. United States*, No. 23-4418, 2025 WL 2636085, at *7 (N.D. Ill. Sept. 12, 2025); *Combs v. United States*, No. 19-CV-00960-SPM, 2021 WL 2948812, at *3 (S.D. Ill. July 14, 2021). To the contrary, many courts recognize that such waivers can be a "useful tool for obtaining concessions from the government" through the plea negotiation process. *Godinez*, 2025 WL 2636085, at *7; *United States v. Carvajal-Mora*, No. 08-0059, 2009 WL 5171822, at *8 (N.D. Okla. Dec. 21, 2009) ("[C]ounsel is not automatically ineffective for advising a client to accept a plea agreement with an appellate and post-conviction waiver, as appellate waivers serve a useful purpose and are an important part of a criminal defendant's bargain with the government."); *see also United States v. Wenger*, 58 F.3d 280, 282 (7th Cir. 1995) ("[A] defendant inclined against appeal or willing to forgo it—perhaps to put an unpleasant episode behind him more quickly—may obtain a concession from the prosecutor."). One may question in the abstract whether plea waivers are, in fact, an effective bargaining chip for defendants given the ubiquity of their use in Rule 11 agreements, but that matter can be put aside here in light of the clear absence of any prejudice to Young caused by the waiver or the plea agreement as a whole. As discussed above, the Court reviewed the provision with Young at his change of plea hearing, and he represented that he understood the extent of the rights he was waiving. *Cf. Meadows v. United States*, No. 24-1052, 2025 WL 815612, at *4 (E.D. Wis. Mar. 14, 2025) (refusing to find ineffective assistance in connection with an appeal waiver where the petitioner merely "assert[ed] baldly" that he would have proceeded to trial had the appellate waiver

been explained to him); *see also United States v. McMaster*, No. 12-172, 2016 WL 11786302, at *7 (D.N.D. Aug. 31, 2016). In fact, the plea agreement inured to his benefit because the government agreed to an additional one-point reduction to his offense level under U.S.S.G. § 3E1.1. (*Young*, *supra*, Doc. 123, p. 4). It also is a notable indication Young was not prejudiced that he never attempted to bring an appeal notwithstanding the waiver. In any event, the only issues Young says he wished to raise on appeal—his career offender designation and his (nonexistent) enhanced penalty under § 841—are meritless for the reasons discussed previously. *See United States v. Watts*, No. 14-20118, 2019 WL 1299700, at *6 (D. Kan. Mar. 21, 2019) (finding no prejudice associated with an appeal waiver where there "were simply no sentencing issues that could have been litigated on appeal"). Young has not established an entitlement to relief on this claim.

## Conclusion

Young's claims are procedurally barred because they are untimely, and he has not established an entitlement to equitable tolling. Even if the claims were timely, they would fail on the merits. For the reasons stated above, his motion to vacate, set aside, or correct his sentence (Doc. 1) pursuant to 28 U.S.C. § 2255 is **DENIED**. This civil action is **DISMISSED with prejudice**, and the Clerk of Court is **DIRECTED** to enter judgment accordingly.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings requires district courts to consider whether to issue or deny a certificate of appealability when entering a final order adverse to a petitioner. Under 28 U.S.C. § 2253(c)(2), a certificate of appealability

may be issued "only if the applicant has made a substantial showing of the denial of a constitutional right." To meet this standard, a petitioner "must have a constitutional claim (or an underlying procedural argument on which a constitutional claim depends), and he must 'demonstrate that reasonable jurists would find the district court's assessment of his constitutional claims debatable or wrong.'" *United States v. Fleming*, 676 F.3d 621, 625 (7th Cir. 2012) (quoting *Tennard v. Dretke,* 542 U.S. 274, 282 (2004)) (emphasis omitted); *see also Slack v. McDaniel,* 529 U.S. 473, 484 (2000) (holding that to obtain a certificate of appealability after dismissal on procedural grounds, a petitioner must show that reasonable jurists "would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "whether the district court was correct in its procedural ruling").

Here, reasonable jurists would not debate that Young's claims are procedurally barred as untimely and are meritless, in any event. Accordingly, a certificate of appealability is denied.

### NOTICE OF APPELLATE RIGHTS

If Young wishes to contest this Order, he has two options. He may seek review of the Order by the Seventh Circuit or request the undersigned to reconsider the Order before going to the Seventh Circuit. If Young chooses to go straight to the Seventh Circuit, he will only be allowed to proceed on his appeal if he first obtains a certificate of appealability. The undersigned Chief District Judge has already declined to issue a certificate of appealability. So, Young must request a certificate of appealability from the Court of Appeals pursuant to Rule 22 of the Federal Rules of Appellate Procedure and

28 U.S.C. § 2253(c). He must also file a notice of appeal within 30 days from the entry of judgment or order appealed from. Fed. R. App. P. 4(a)(1)(A). The deadline can be extended for a short time only if Young files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. Fed. R. App. P. 4(a)(5)(A), (C); *see also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State Univ.*, 667 F.3d 800, 807-08 (7th Cir. 2011) (explaining the excusable neglect standard).

The current cost of filing an appeal with the Seventh Circuit is $605.00. The filing fee is due at the time the notice of appeal is filed. Fed. R. App. P. 3(e). If Young cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion") along with a recent statement for his prison trust fund account. *See* Fed. R. App. P. 24(a)(1)(C). The IFP motion must set forth the issues Young plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If he is allowed to proceed IFP on appeal, he will be assessed an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. 28 U.S.C. § 1915(b)(2).

On the other hand, if Young wants to start with the undersigned, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). The motion *must* be filed within 28 days of the entry of judgment, and the deadline *cannot* be extended. Fed. R. Civ. P. 59(e); 6(b)(2). The motion also must comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *Elustra v. Mineo*, 595 F.3d 699, 707-08 (7th Cir. 2010); *see also Blue v. Hartford Life*

*& Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) ("To prevail on a Rule 59(e) motion to amend judgment, a party must clearly establish (1) that the court committed a manifest error of law or fact, or (2) that newly discovered evidence precluded entry of judgment.") (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be stopped. Fed. R. App. P. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. Fed. R. App. P. 4(a)(1)(A), (a)(4), & (a)(4)(B)(ii). To be clear, if the Rule 59(e) motion is filed outside the 28-day window or "completely devoid of substance," the motion will not stop the clock for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor*, 556 F.2d 818, 819-20 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Young showing excusable neglect or good cause.

**IT IS SO ORDERED.**

DATED:   December 3, 2025

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**